49 CCPA

**Application of Edwin FLOYD, Jr.**

**Patent Appeal No. 6747.**

United States Court of Customs and Patent Appeals.

Feb. 13, 1962.

Rehearing Denied April 11, 1962.

William J. Keating, New York City (Truman S. Safford, Curtis, Morris & Safford, New York City, Marshall M. Holcombe, Harrisburg, Pa., Roger L. Hansel, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge JOSEPH R. JACKSON, Retired.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of claims 15 and 16 in appellant's application entitled "Crimping Apparatus" as unpatentable over certain prior art.

Claim 15 is representative and reads:

"A pair of opposed co-operating dies adapted to make a crimped connection between a metal ferrule and a conductor wherein the ferrule is entirely supported by the dies after completion of the crimping operation including: a first die having crimping faces terminating in a vertex to form a first angle, said crimping faces forming a 'V' in cross-section, a second mating die nesting within the first die, said second die also having crimping faces forming

a 'V' in cross-section, and terminating in a vertex to form a second angle which is equal and opposite to said first angle, whereby the first die will accommodate any one of a plurality of mating dies over a range of sizes to form a confined symmetrical crimped connection having a plurality of equal sides."

The references of record are:

| Hebert | 1,241,377 | Sept. 25, 1917 |
| Hughes | 1,677,968 | July 24, 1928 |
| Bergan | 2,427,518 | Sept. 16, 1947 |
| Hennessey | 2,534,867 | Dec. 19, 1950 |

The invention relates to a pair of matched dies possessing particular cross-sectional configurations and utilizable for crimping ferrule-type connectors to electrical conductors to effect an electrical and mechanical connection. The first die has a cross-sectional configuration such that the working faces form a "V" shape. The second die fits within, and is embraced by, portions of the "V" shaped working faces of the first die. The cross-sectional configuration of the second die has a "W" shape so that the outer sides of the "W" are at the same angle as the sides of the "V" in the first die.

The Hughes, Bergan and Hennessey patents were relied on by the board only to show that it is well known to make crimped connections "between relatively soft metals by the approach of comparable metal parts." They need not be discussed further.

The sole reference relied on by the examiner and the board to reject the claims is the Hebert patent. Hebert relates to die stocks and in particular to "jaws" or guide members which keep the work piece in proper alignment during a threading operation. The jaws consist of two elements which have the same cross-sectional configuration as appellant's dies.

In affirming the examiner, the board stated:

"We have compared appellant's disclosed die conformations with the work contacting members 6, 7 of Hebert and see no distinguishing contour or essential differences in force of application, proportion, or strength requirements. It appears to us that claim 15 recites no more than the disclosed pair of mating elements found both in appellant's drawings and at 6, 7 in Hebert. Under such circumstances we share the examiner's view that no structurally novel apparatus is presented and patentability cannot be predicated upon a mere new use of old devices. * * * *"

Appellant contends that the board erroneously thought that Hebert's "jaws" were, in fact, dies. We cannot agree with that contention. Although the board did make a single reference to "the die 6 of Hebert," we find that, reading the decision as a whole, the board did not consider the jaws to be dies *per se* but rather to be elements whose structure is substantially the same as the structure of appellant's dies.

Appellant also contends that his "die" and Hebert's "guide jaw" are entirely different and distinct elements. However, as pointed out in the solicitor's brief, the term "die" implies both structure and use and the differences between the "die" and the "jaw" here lie in their use, not in their structure. The physical structures are identical, as can be seen from even a cursory examination of the drawings of the respective elements.

Further, appellant contends that the board "inferentially combined nonanalogous art" by referring to the Bergan, Hughes and Hennessey patents. We do not agree with that contention. The sole reference made to those patents, as noted above, was in the nature of setting forth a fact well known in the art. The references were not applied to any portion of the structure of appellant's dies. We note that the board stated:

"In arguing the rejection at page 3 of the answer the examiner states that the rejection is upon Hebert and not upon a combination of references. The examiner's position is

that Hebert discloses all structural features designated by the rejected claims and that patentability is not established by a new use for [an] old structure."

Finally, appellant points out that only his second die need be changed if larger or smaller work-pieces are utilized whereas the prior art required a change of both dies. He further states that Hebert does not disclose that feature. In disposing of that contention we need only look to appellant's claims which state in that regard:

" * * * *whereby* the first die will accommodate any one of a plurality of mating dies over a range of sizes to form a confined symmetrical crimped connection having a plurality of equal sides." [Emphasis supplied.]

Such a clause does not distinguish over Hebert's jaw which, it appears, could also "accommodate any one of a plurality of mating" elements if that were desired.

The decision is affirmed.

Affirmed.